# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BENSON A. SNAIDER, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-1564 |
| v. | : | |
| | : | |
| ACCOUNT CONTROL TECH., INC., et al., | : | JUNE 6, 2018 |
| Defendants. | : | |

## RULING RE: MOTION TO DISMISS BY ACCOUNT CONTROL TECHNOLOGY, INC. (DOC. NO. 33) AND MOTION TO DISMISS BY DEPARTMENT OF ADMINISTRATIVE SERVICES AND CONNECTICUT CLIENT SECURITY FUND (DOC. NO. 35)

## I.    INTRODUCTION

The plaintiff, Benson A. Snaider, filed his Amended Complaint on November 19,

2017, against the defendants Account Control Technology, Inc. ("ACT"), the

Connecticut Department of Administrative Services ("DAS"), and the Connecticut Client

Security Fund Committee ("CSF").  See Amended Complaint ("Am. Compl.") (Doc. No.

20).  In it, Snaider claims that the defendants violated a discharge injunction he

obtained in Bankruptcy Court and that a state court order of restitution against him is

unenforceable in violation of the discharge injunction.  See id. at ¶¶ 43–51.

ACT filed a Motion to Dismiss the Amended Complaint on January 3, 2018.  See

Motion to Dismiss Amended Complaint by ACT ("ACT Mot. to Dismiss") (Doc. No. 33).

DAS and CSF also filed a joint Motion to Dismiss the Amended Complaint on the same

day.  See Motion to Dismiss the Amended Complaint by DAS and CSF ("DAS/CSF Mot.

to Dismiss") (Doc. No. 35).  The court addresses both Motions together in this Ruling.

For the reasons stated below, ACT's Motion to Dismiss is **GRANTED**, and the

Amended Complaint is **DISMISSED** as to all defendants.  Because the court dismisses

the Amended Complaint on the grounds stated in ACT's Motion to Dismiss, which apply

equally to all defendants, the court does not reach all of the arguments in DAS and CSF's Motion to Dismiss.

## II.   FACTS

The Amended Complaint alleges the following facts.[1]  Beginning on April 7, 2004, Snaider represented Minchin Buick, Inc. ("Minchin") in negotiations with the City of Stamford ("the City") regarding compensation for a proposed taking of Minchin's property for a public project.  <u>See</u> Am. Compl. at ¶ 7.  During negotiations, the City offered $800,000, which Minchin rejected.  <u>See id.</u> at ¶ 10.  The City then initiated condemnation proceedings and deposited $800,000 with the Superior Court, which Snaider deposited in his trust account.  <u>See id.</u> at ¶ 11.

Snaider appealed the City's offer and obtained a judgment of damages of $1,143,360 on June 1, 2011.  <u>See id.</u> at ¶ 12.  The City provided a second check of $469,553.53, which Snaider delivered to Minchin on June 6, 2011.  <u>See id.</u> at ¶ 14.  Snaider revealed to Minchin that he did not have the $800,000 previously deposited.  <u>See id.</u>  Minchin then sued Snaider in Stamford Superior Court and obtained a prejudgment remedy against Snaider.  <u>See id.</u> at ¶ 15.  Pursuant to the prejudgment remedy, Snaider paid Minchin $127,804.15.  <u>See id.</u> at ¶ 16.  On June 22, 2011, Minchin then filed a claim with CSF, seeking reimbursement of the $800,000.  <u>See id.</u> at ¶ 17.[2]

---

[1] The court accepts all factual allegations in the Amended Complaint as true for the purposes of a motion to dismiss.  <u>See</u> Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

[2] The court notes that some of the monetary amounts in the facts appear to be inconsistent.  For example, it is not clear from the Amended Complaint why the City provided a second check of $469,553.53, resulting in a total paid of $1,269.553.53, not $1,143,360.00.  Nor is it clear to the court why Minchin filed a claim with CSF for $800,000, after it already received $127,804.15 in payment from Schnaider.  These inconsistencies are not explained by either party in the record.  Therefore, the court

On February 12, 2012, Snaider and his wife filed for Chapter 7 bankruptcy, listing Minchin as a claimant. See id. at ¶ 18. Minchin's attorney appeared in the bankruptcy case, but did not object to the dischargeability of Snaider's debt to Minchin. See id. at ¶ 20. The Amended Complaint alleges that therefore Snaider's debt to Minchin was discharged by the discharge injunction entered by the Bankruptcy Court on May 30, 2012. See id. at ¶ 20. Minchin received $18,705.12 in the final distribution of the bankrupt estate and, on January 13, 2013, withdrew its case before the Stamford Superior Court. See id. at ¶¶ 21–22. The Amended Complaint alleges that the withdrawal of the state court case prevented Minchin from substantiating its claim for reimbursement with CSF. See id. at ¶¶ 23–24.

On April 11, 2012, Snaider had pleaded guilty to larceny in the first degree for his embezzlement of Minchin's funds. See id. at ¶¶ 25–26. He was sentenced to 5 years of probation, execution suspended, and "restitution for verifiable out of pocket expenses." See id. at ¶ 26. On February 28, 2013, Minchin filed a Motion for Determination of Restitution in order to determine the amount of restitution and to order payment. See id. at ¶ 27. Sometime after July 20, 2013, the state court ordered restitution of $536,000, payable to CSF. See id. at ¶¶ 30, 35. Snaider was ordered to pay $29,777.79 every month until January 11, 2017. See id. at ¶ 34. The Amended Complaint alleges that the sole purpose of the Motion was to substantiate Minchin's application for payment to CSF, and that the payment was ordered to be made to CSF as reimbursement for its payment to Minchin. See id. at ¶¶ 32, 35.

---

recites the facts as they are presented in the Amended Complaint. The inconsistencies in the numbers do not affect the court's analysis on the Motion to Dismiss.

Snaider paid only $180 of the $536,000 restitution.  See id. at ¶ 36.  On January 6, 2017, he was served with a Notice to Appear and Complaint for Violation of Probation for his failure to complete the restitution payments.  See id. at ¶ 36.  Snaider argued that the debt on which the restitution was based had been previously discharged in bankruptcy.  See id. at ¶ 37.  The state court terminated Snaider's probation upon payment of $2,000 for reimbursement to CSF and entered a Restitution Order of $536,000, payable to CSF, on April 20, 2017.  See id. at ¶ 38.

DAS sent Snaider a letter demanding payment of the $536,000 restitution on May 10, 2017.  See id. at ¶ 39.  ACT then sent Snaider a letter demanding payment of the $536,000 restitution on June 30, 2017.  See id. at ¶ 40.  ACT also made phone calls to Snaider demanding payment of the restitution.  See id. at ¶ 41.

In the Amended Complaint, Snaider asserts two claims.  Count One alleges that the three defendants violated the discharge injunction of the bankruptcy court by attempting to collect the restitution amount, which Snaider argues was discharged in bankruptcy.  See id. at ¶¶ 43–49.  Count Two alleges that the state court's Restitution Order on April 20, 2017, is unenforceable because it is enjoined by the discharge injunction.  See id. at ¶¶ 50–51.  Both Counts appear to be based on section 524 of title 11 of the United States Code.  See id. at ¶¶ 44, 48, 51.  Snaider seeks relief in the form of a declaratory judgment that the Restitution Order is void and unenforceable, an injunction enjoining the defendants from attempting to collect payment from him, and civil contempt, costs, and fees pursuant to section 105(a) of title 11 of the United States Code.[3]  See id. at 7.

---

[3] Although the Amended Complaint also cites section 362(k)(1) in its prayer for relief for civil contempt, costs, and fees, see Am. Compl. at 7, Snaider concedes that section 362(k)(1) is inapplicable

## III. LEGAL STANDARD

### A. Lack of Subject Matter Jurisdiction – Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. Id.

### B. Failure to State a Claim – Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). Under Rule 12(b)(6), to survive a motion to dismiss for failure to state a claim, that plain statement must allege facts sufficient to state a plausible claim for relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While this plausibility standard does not require probability, it is not satisfied by "a sheer possibility that a defendant has acted unlawfully" or by facts that are "merely consistent with a defendant's liability." Id. (internal quotation marks omitted).

---

here and that his claims are based solely on sections 524 and 105. See Memorandum in Opposition to ACT's Motion to Dismiss ("Mem. in Opp. to ACT") (Doc. No. 40) at 12. Section 362(k)(1), which permits recovery of damages for a willful violation of an automatic stay, is inapplicable here because the Amended Complaint has not alleged any violation of an automatic stay issued by the Bankruptcy Court. See 11 U.S.C. § 362(k)(1) (2016).

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all material factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  See Hemi Grp., LLC v. City of New York, 559 U.S. 1, 5 (2010); Jaghory v. N.Y. State Dep't Educ., 131 F.3d 326, 329 (2d Cir. 1997).  However, the court is not required to accept as true a "legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).  In those instances, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  The court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice should be taken."  Samuels v. Air Trans. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## IV.    DISCUSSION

In its Motion to Dismiss, ACT argues that Snaider has not stated a claim on which relief can be based because the appropriate avenue for redressing an alleged violation of a discharge injunction is to seek contempt sanctions before the Bankruptcy Court pursuant to section 105(a) of title 11 of the United States Code, not to file a separate complaint in the district court.  See Memorandum in Support of ACT Mot. to Dismiss ("ACT Mem. in Supp.") (Doc. No. 34) at 9–15.  ACT argues that neither section 524 nor section 105 creates a private right of action in a lawsuit separate from the bankruptcy case.  See id.

In their Motion to Dismiss, DAS and CSF argue that the Rooker-Feldman doctrine deprives this court of subject matter jurisdiction to review and void the Restitution Order entered by the state court.  See Memorandum in Support of DAS/CSF Mot. to Dismiss ("DAS/CSF Mem. in Supp.") (Doc. No. 35-1) at 12–14.  Further, they

argue that, even if <u>Rooker</u>-<u>Feldman</u> does not remove the court's jurisdiction, the Restitution Order is nonetheless valid and the defendants have not violated the discharge injunction because the restitution ordered is non-dischargeable.[4] <u>See</u> <u>id.</u> at 7–10.

Because the arguments are equally applicable to each defendant, the court considers the arguments as to all defendants, regardless of which Motion raises the argument.[5] The court begins by considering the defendants' <u>Rooker</u>-<u>Feldman</u> argument as to whether it has subject matter jurisdiction to consider challenges to the state court's Restitution Order because issues of subject matter jurisdiction are appropriately determined prior to reaching arguments on the merits.[6] The court then considers the defendants' argument that the case should have been brought in the Bankruptcy Court in the first instance. Because the court agrees with the defendants on this latter argument, it need not reach the merits of whether the Restitution Order was a non-dischargeable debt, as that question would then for the Bankruptcy Court to determine.

---

[4] The court need not address DAS and CSF's third argument that Snaider fails to state a claim under section 362(k)(1) because Snaider has conceded that he does not assert his claims on this basis. <u>See</u> Mem. in Opp. to ACT at 12.

[5] Additionally, the Motions have each adopted the arguments of the other. <u>See</u> ACT Mem. in Supp. at 9 (deferring to DAS and CSF's Motion on the non-dischargeability of the Restitution Order); <u>id.</u> at 6 n.4 (reserving, but not raising, the <u>Rooker</u>-<u>Feldman</u> argument); DAS/CSF Mem. in Supp. at 7 (adopting the argument in ACT's Motion that the exclusive remedy is contempt sanctions before the Bankruptcy Court and that no private cause of action exists in this lawsuit).

[6] The court finds it unnecessary to address Snaider's other arguments that the court has original jurisdiction over cases related to title 11, pursuant to section 1334 of title 28 of the United States Code. <u>See</u> Mem. in Opp. to ACT at 8–9. The defendants have not challenged the court's subject matter jurisdiction as a general matter, only as it pertains to <u>Rooker</u>-<u>Feldman</u>.

A.    Rooker-Feldman Doctrine

Under the Rooker-Feldman doctrine, a federal district court lacks subject matter jurisdiction to review final state court judgments.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283–84 (2005); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).  "The Rooker-Feldman doctrine in a bankruptcy case is implicated when a bankruptcy issue is raised in the state court and thereafter . . . the same issue is raised in the bankruptcy court."  In re Cruz, 254 B.R. 801, 805 n.5 (Bankr. S.D.N.Y. 2000).  In order for Rooker-Feldman to apply, four requirements must be met: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state court judgment must have been rendered before the district court proceedings commenced."  Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and citation omitted).

The defendants argue that these four requirements are satisfied in this case.  See DAS/CSF Mem. in Supp. at 13.  The defendants argue that (1) Snaider lost in state court when the Restitution Order was entered against him, (2) he alleges injury resulting from the defendants' efforts to collect on the Restitution Order, (3) he asks the court to find the Restitution Order void and unenforceable, and (4) the Restitution Order was entered on April 20, 2017, prior to the filing of the Complaint in this case on September 19, 2017.  See id.  Snaider argues to the contrary, however, that Rooker-Feldman does not deprive federal courts of their jurisdiction to enforce discharge injunctions under section 524 of the Bankruptcy Code.  See Memorandum in Opposition to DAS/CSF's Motion to Dismiss ("Mem. in Opp. to DAS/CSF") (Doc. No. 41) at 9–10.

Although the Second Circuit has not expressed an opinion on this question,[7] a number of courts in this Circuit have found an exception to Rooker-Feldman to exist when a state court judgment is void because it violates a bankruptcy court's discharge injunction.  See, e.g., In re Heating Oil Partners, No. 3:08-CV-1976 CSH, 2009 WL 5110838, at *3–*4 (D. Conn. Dec. 17, 2009), aff'd sub nom. In re Heating Oil Partners, LP, 422 F. App'x 15 (2d Cir. 2011); In re Farrell, 293 B.R. 99, 100 (Bankr. D. Conn. 2003) ("[T]hat doctrine [Rooker-Feldman] does not bar this court from determining whether a debt had been discharged and whether a discharge injunction has been violated."); In re Dabrowski, 257 B.R. 394, 406 (Bankr. S.D.N.Y. 2001) ("[T]here is an exception to the application of Rooker-Feldman . . . when the state court judgment is void, which . . . is the case when a judgment is entered either before or after the claim underlying the judgment is discharged."); In re Cruz, 254 B.R. at 805, 811–12 (relying on Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich), 229 B.R. 777 (9th Cir. BAP 1999)).

The courts reason that the Rooker-Feldman doctrine does not apply when the state court judgment is void.  See, e.g., In re Heating Oil Partners, 2009 WL 5110838, at *4.  "[B]ecause a void judgment is null, vacating such a judgment is a mere formality and does not intrude upon the notion of mutual respect in federal-state interests."  Id. (quoting In re Dabrowski, 257 B.R. at 406).  Section 524(a) of the Bankruptcy Code states a discharge injunction "voids any judgment at any time obtained, to the extent

_____

[7] The court notes that, although the Second Circuit has not expressed an opinion on this question, the district court's opinion in In re Heating Oil Partners was affirmed on appeal by the Second Circuit without discussion of the Rooker-Feldman question.  See In re Heating Oil Partners, LP, 422 Fed. App'x 15, 18 (2d Cir. 2011).

that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged." 11 U.S.C. § 524(a)(1) (2016). Therefore, because a judgment in violation of a discharge injunction is void, the Rooker-Feldman doctrine does not prevent federal courts from reviewing whether the state judgment violates the discharge injunction. See, e.g., In re Heating Oil Partners, 2009 WL 5110838, at *4. Additionally, these courts note that such an exception is consistent with the fact that the application of Rooker-Feldman is narrow in the bankruptcy context. See id. at *3; In re DiGeronimo, 354 B.R. 625, 640–41 (Bankr. E.D.N.Y. 2006) ("Recent caselaw confirms that the application of the Rooker-Feldman doctrine is extremely limited, however, particularly in the bankruptcy context . . . .").

A few courts within the Circuit have disagreed and applied the Rooker-Feldman doctrine to dismiss for lack of jurisdiction a challenge to a state court judgment based on the dischargeability of the debt. See In re Candidus, 327 B.R. 112, 118–21 (Bankr. E.D.N.Y. 2005); Odom v. Columbia Univ., 906 F. Supp. 188, 196 (S.D.N.Y. 1995) (applying Rooker-Feldman in the context of a judgment allegedly violating an automatic stay rather than a discharge injunction). These cases, however, are the minority, and the court is not persuaded by their reasoning. Odom does not address the exception that Rooker-Feldman does not apply to a void judgment, and In re Candidus treats a state court judgment in violation of a discharge injunction as erroneous rather than void. See In re Candidus, 327 B.R. at 121 ("[O]nce the state court exercises subject matter jurisdiction and renders judgment, the state court judgment is at worst erroneous, not void ab initio, and the bankruptcy court lacks jurisdiction to collaterally attack the decision." (quoting In re Toussaint, 259 B.R. 96, 102–03 (Bankr. E.D.N.C. 2000)).

The court agrees with the first set of cases that a state court judgment in violation of the discharge injunction is void and therefore that Rooker-Feldman is not applicable to such judgments.  See 11 U.S.C. § 524(a)(1) (stating that a discharge injunction "voids any judgment" that determines personal liability for a discharged debt).  In doing so, the court notes that the defendants do not respond to Snaider's argument in their Reply and do not advance any arguments as to why the court should not recognize this exception to Rooker-Feldman here.  See Reply in Support of DAS/CSF Mot. to Dismiss ("DAS/CSF Reply") (Doc. No. 43) (stating only that, "[e]ven if the Plaintiff were correct that 'there is no Rooker-Feldman issue here' (a conclusion that the State Movants do not concede), the Order of Restitution should not be deemed void because it is excerpted from discharge under § 523(a)(7) of the Bankruptcy Code").  Indeed, if Rooker-Feldman prevented federal courts from determining whether a state court judgment violates a discharge injunction, section 524(a) would be meaningless to the extent that it voids such judgments.  The court declines to read Rooker-Feldman in a way that would functionally nullify the purpose of section 524 and prevent federal courts from enforcing a bankruptcy court's discharge injunction.

The court notes, however, that the exception to Rooker-Feldman only applies to the extent that it permits a federal court to determine whether the state court judgment is voided by the discharge injunction.  It does not permit the court to examine the validity or correctness of the state court judgment on other grounds.  See In re Euro-Am. Lodging Corp., No. 12 CIV. 4996 (AJN), 2013 WL 12085090, at *5 (S.D.N.Y. Mar. 25, 2013), aff'd, 549 Fed. App'x 52 (2d Cir. 2014) ("[T]o the extent [the plaintiff] requests relief as to state court judgments entered against him beyond an interpretation of

whether those judgments violate the discharge injunction . . . the Bankruptcy Court was correct to deny such relief based on the <u>Rooker</u>-<u>Feldman</u> doctrine.").  Therefore, Snaider's Amended Complaint is not dismissed on <u>Rooker</u>-<u>Feldman</u> grounds to the extent that it is based on a claim of violation of the discharge injunction.  However, to the extent that his claim under Count Two argues that the Restitution Order is invalid because CSF was not a victim or because the state court failed to hold an evidentiary hearing or other criminal proceeding, <u>see</u> Mem. in Opp. to DAS/CSF at 6–9, that claim is dismissed with prejudice under <u>Rooker</u>-<u>Feldman</u>.

      B.     <u>Bankruptcy Court as Appropriate Court</u>

      The defendants next argue that the Amended Complaint should be dismissed because neither section 524 nor section 105 create a private right of action to bring a case in a separate lawsuit from the bankruptcy case in which the discharge injunction was issued.  <u>See</u> ACT Mem. in Supp. at 9–15.  They argue that the appropriate remedy for a violation of the discharge injunction is to seek contempt sanctions and other necessary relief pursuant to section 105(a), which should be presented to the Bankruptcy Court rather than to this court.  <u>See</u> <u>id.</u>

      Section 524(a)(1) states that a discharge injunction "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged."  11 U.S.C. §524(a)(1) (2016).  Section 524(a)(2) states that a discharge injunction also "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).  Snaider's Amended Complaint alleges that the Restitution Order

violates section 524(a)(1) and that the collection efforts of the defendants pursuant to the Restitution Order violate section 524(a)(2).

The Second Circuit has not yet decided whether section 524(a) creates an implied private cause of action.  See Garfield v. Ocwen Loan Servicing, LLC, 811 F.3d 86, 91–92 & n.7 (2d Cir. 2016) (stating that section 524(a)(2) "does not explicitly create a cause of action for its violation," but then noting, "we do not decide whether the discharge injunction provision should be construed implicitly to create a cause of action for its violation, in addition to a contempt remedy"); Yaghobi v. Robinson, 145 Fed. App'x 697, 699 (2d Cir. 2005) (noting that the court "need not reach the question of whether [the plaintiff] may assert a private right of action under § 524").  A number of other Circuits that have considered the question, however, have held that section 524(a) does not create a private right of action.  See, e.g., Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1188–89, 1191 (9th Cir. 2011); In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 506–10 (9th Cir. 2002); Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 421–23 (6th Cir. 2000) (describing the courts that have held that section 524 does not create an implied private right of action to be a "clear majority").  Some district courts in this Circuit have followed those other Circuits in the absence of Second Circuit precedent.  See Killion v. New York Dep't of Taxation & Fin., No. 1:12-CV-027 GLS/RFT, 2012 WL 1086155, at *3 (N.D.N.Y. Apr. 2, 2012); cf. Diamante v. Solomon & Solomon, P.C., No. 1:99CV1339 (FJS/DRH), 2001 WL 1217226, at *4 n.2 (N.D.N.Y. Sept. 18, 2001).

This court, however, finds Second Circuit precedent in Yaghobi v. Robinson to be on point and therefore concludes that it is not necessary to reach the question of

whether a private right of action exists under section 524.[8]  See Yaghobi, 145 Fed.

App'x at 699.  In Yaghobi, as in the case here, the plaintiff alleged that the defendants

"improperly attempted to collect a debt in violation of a bankruptcy discharge injunction."

Id. at 698.  The plaintiff sued the defendants under, inter alia, section 524 and section

105(a) of the Bankruptcy Code.  See id.  The district court dismissed the complaint

without prejudice to the plaintiff pursuing the section 105(a) claim in bankruptcy court,

and the Second Circuit upheld the dismissal.  See id.

In doing so, the Second Circuit stated, "Where, as in this case, a debtor thinks a

creditor is acting in violation of a bankruptcy court's § 524 discharge order, relief is

properly sought in the first instance from the bankruptcy court 'rather than in the district

court, which only has appellate jurisdiction over bankruptcy cases.'"[9]  Id. at 699 (quoting

E. Equip. & Servs. Corp. v. Factory Point Nat. Bank, Bennington, 236 F.3d 117, 121 (2d

Cir. 2001)).  The appropriate avenue for that relief is an order of contempt by the

bankruptcy court pursuant to section 105(a), which gives the bankruptcy court "limited

equitable powers . . . to issue orders necessary or appropriate to carry out the

provisions of that title."  Id.; see 11 U.S.C. § 105(a).  For these reasons, the Second

Circuit in Yaghobi affirmed the district court's dismissal on this basis and found it

---

[8] The court acknowledges that Yaghobi was decided on summary order and therefore is not binding precedent.  However, the court nonetheless finds Yaghobi to be persuasive guidance from the Second Circuit as to how it would decide the question now before this court.  The court therefore follows the Second Circuit's decision in Yaghobi.

[9] The Yaghobi court relies on prior Second Circuit precedent holding that claims based on a violation of a bankruptcy court's automatic stay "must be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy cases."  See E. Equip. & Servs. Corp., 236 F.3d at 121.  Yaghobi extends that holding from violations of automatic stays under section 362 to violations of discharge injunctions under section 524.  See Yaghobi, 145 Fed. App'x at 698–99.

unnecessary to decide whether section 524 created a private right of action. <u>See</u> <u>Yaghobi</u>, 145 Fed. App'x at 699.

The court considers this case to be substantially the same as <u>Yaghobi</u>. Snaider alleges that the defendants' collection efforts and the state court's Restitution Order violate the discharge injunction of the Bankruptcy Court and seeks relief pursuant to section 524(a) and section 105(a). <u>See</u> Am. Compl. at ¶¶ 44, 48, 51; <u>see id.</u> at 7. Like the plaintiff in <u>Yaghobi</u>, Snaider should have brought these claims under section 105(a) by motion for contempt order before the Bankruptcy Court. <u>See also</u> <u>Barrientos</u>, 633 F.3d at 1191; <u>In re Kalikow</u>, 602 F.3d 82, 96 (2d Cir. 2010); <u>In re Anderson</u>, 550 B.R. 228, 238–39 (S.D.N.Y. 2016), <u>leave to appeal denied</u>, No. 15-CV-4227 (NSR), 2016 WL 8715935 (S.D.N.Y. Aug. 5, 2016); <u>Killion</u>, 2012 WL 1086155, at *3 ("[T]he proper method for seeking a sanction premised upon a discharge violation is a motion for contempt in the bankruptcy court that issued the discharge."). Therefore, like the district court affirmed in <u>Yaghobi</u>, the court dismisses the Amended Complaint without prejudice to Snaider pursuing these claims in Bankruptcy Court. Because both Count One and Count Two are based on a violation of the discharge injunction, to the extent that claims remain in Count Two, <u>see</u> <u>supra</u> at 12, the court's holding applies to both Counts.

Snaider's arguments to the contrary are unpersuasive. First, the court notes that Snaider primarily cites cases from other Circuits, which are not binding on this court. <u>See</u> Mem. in Opp. to ACT at 7–13. In contrast, <u>Yaghobi</u> was decided by the Second Circuit, albeit on summary order. Second, Snaider's arguments mistakenly focus on whether section 1334 of title 28 of the United States Code grants the court original

subject matter jurisdiction over cases under title 11.  See id. at 7–10 (citing Justice Cometh, Ltd. v. Lambert, 426 F.3d 1342, 1343 (11th Cir. 2005); Roberts v. Am. Bank & Tr. Co., 835 F. Supp. 2d 183, 206 (E.D. La. 2011)).  The defendants do not dispute that district courts generally have original jurisdiction over title 11 cases.  See Reply in Support of ACT Mot. to Dismiss ("ACT Reply") (Doc. No. 42) at 3.  The district court's original jurisdiction, however, is not at issue here.  Rather, the question is whether the Amended Complaint fails to state a claim on which relief can be based because the appropriate remedy is a motion for contempt order before the Bankruptcy Court.  See Church v. Accretive Health, Inc., No. CIV.A.14-0057-WS-B, 2014 WL 7184340, at *11 (S.D. Ala. Dec. 16, 2014) ("[The] Rule 12(b)(6) Motion is not predicated on the notion that Count Two fails for want of jurisdiction, but rather that Count Two fails to state a valid claim because there is no private right of action.  Whether this Court would have jurisdiction to hear such a cause of action if it existed is beside the point.").

The remaining cases cited by Snaider are distinguishable from this case.  Most of the cases Snaider cites pertain to violations of an automatic stay rather than a discharge injunction.  See Justice Cometh, 426 F.3d at 1342–43; Price v. Rochford, 947 F.2d 829, 832 n.1 (7th Cir. 1991); Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989); Roberts, 835 F. Supp. 2d at 205–06.  Snaider attempts to argue from these cases that, "[i]f there is a substantial basis for the District Court to entertain a debtor's suit to enjoin violations of the automatic stay during the pendency of the bankruptcy proceeding, then a fortiori there is a substantially greater basis for the District Court to accept and determine a cause of action brought to sanction a violation of the discharge injunction after the bankrupt estate has been finally

dealt with and closed by the discharge in bankruptcy." Mem. in Opp. to ACT at 11. Snaider appears to base this argument on both the fact that a violation of a discharge injunction is a violation of a statute rather than an order issued by the bankruptcy judge and the fact that there is no pending bankruptcy case after the discharge injunction issues. See id. at 11–12.

Snaider cites no case law in support of his reasoning. In fact, he overlooks an important distinction between violations of automatic stays and discharge injunctions. "[T]he Bankruptcy Code provision concerning the discharge injunction, see 11 U.S.C. § 524(a)(2), does not explicitly create a cause of action for its violation, whereas the automatic stay provision provides such a remedy, see id. § 362(k)." Garfield, 811 F.3d at 91–92. Thus, even if a plaintiff were permitted to bring a cause of action in district court for violation of an automatic stay, such a conclusion does not necessarily translate to violations of a discharge injunction. Moreover, to the extent that the cases cited by Snaider permit a plaintiff to bring a claim in district court for violation of an automatic stay, see, e.g., Price, 947 F.2d at 832 n.1; Martin-Trigona, 892 F.2d at 577; those cases directly contradict binding Second Circuit precedent. See E. Equip. & Servs. Corp., 236 F.3d at 121. In Eastern Equipment, the Second Circuit held that "[a]ny relief for a violation of the stay must be sought in the Bankruptcy Court."[10] Id. Therefore, the court rejects Snaider's argument.

---

[10] Snaider attempts to argue that Garfield undermines the reasoning in Eastern Equipment. See Mem. in Opp. to ACT at 12–13. The defendants are correct that Garfield concerns whether the Bankruptcy Code precludes claims under the Fair Debt Collection Practices Act for conduct that violates a discharge injunction, a question that is not at issue in this case, and does not cite or mention Eastern Equipment at all. See Garfield, 811 F.3d at 91–92. Thus, the court does not read Garfield as undermining Eastern Equipment, which remains good law.

Finally, Snaider cites Bessette v. Avco Financial Services Inc., a First Circuit case holding that a district court may exercise equitable powers under section 105 to enforce a discharge injunction under section 524.  See Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444–46 (1st Cir. 2000), amended on denial of reh'g (Dec. 15, 2000). While the court acknowledges that the holding in Bessette is contrary to the court's decision here, the court notes that that holding in Bessette is incompatible with Yaghobi, and Yaghobi, not Bessette, is authority from this Circuit.  See Yaghobi, 145 Fed. App'x at 498–99 (affirming the district court's dismissal of the plaintiff's section 105 claim as appropriately brought before the bankruptcy court).  No district courts in this Circuit have followed Bessette in this holding.[11]

Accordingly, because the court follows the Second Circuit in Yaghobi, the Amended Complaint is dismissed without prejudice to the plaintiff seeking relief before the Bankruptcy Court.  Snaider is advised that the appropriate remedy for the relief that he seeks is to move to reopen his case in the Bankruptcy Court and to move for a contempt order pursuant to section 105(a).  See Killion, 2012 WL 1086155, at *3. Because the court dismisses on these grounds, the court does not reach the merits of the defendants' arguments as to whether the Restitution Order violates the discharge injunction or not.  Such a determination is for the Bankruptcy Court to make in the first instance, should Snaider choose to pursue relief there.

---

[11] To the extent that Snaider points to Garfield's citation of Bessette, the court notes that Garfield cites Bessette for the proposition that a "discharge injunction [is] enforceable by contempt proceedings," a statement not inconsistent with Yaghobi or this court's decision here.  See Garfield, 811 F.3d at 92 n.7. Garfield does not cite Bessette for the proposition that those contempt proceedings can be held before the district court in the first instance.

**V.     CONCLUSION**

For the reasons stated above, the Motions to Dismiss are **GRANTED** and the

Amended Complaint is **DISMISSED**.  To the extent that Count Two is based on the

argument that the state court's Restitution Order is unenforceable for reasons unrelated

to the discharge injunction, Count Two is dismissed with prejudice.  To the extent that

Counts One and Two are based on a violation of the discharge injunction, Counts One

and Two are dismissed without prejudice to the plaintiff moving to reopen his case

before the Bankruptcy Court in order to seek appropriate relief there.

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of June, 2018.


/s/ Janet C. Hall     _____
Janet C. Hall
United States District Judge